Chamberlain, Kimberly Vandenbrook. On behalf of the accountant, Ms. Michelle J. Rozevich. On behalf of the appellee, Mr. Charles M. Woodpile. Ms. Rozevich, is that Russian? I'm sorry? Is that Russian? Oh, we thought for a long time it was, but then we found out when we were adults that it was actually Hungarian. Do you know what it means? I do not. I'm going to look it up on the internet. Well, we have found our relatives there. You may proceed. Thank you. Good morning. Good morning. My name is Michelle Rozevich and I represent the appellants, Kimberly and John Vandenbrook, in this matter. We need to stay focused on what the issues are here because there really is such a mountain of factual evidence. This is an appeal, obviously, from the sale of a house that was sold in foreclosure and the confirmation of the sale. But what we're looking at is an underlying motion for summary judgment. And therefore, we have to keep in mind that standard for the summary judgment under Section 1005 of the Civil Procedure. And what we're looking at is whether or not there were any questions of material fact that should have prevented that underlying summary judgment. We do have a mountain, an absolute mountain, of issues of material fact. And what we see from the transcripts, and we have extensive transcripts here from the judge and from the proceedings before the trial judge, is that the judge specifically used a standard that was not consideration of the facts and was not looking for whether there were questions of material fact. But was it, I mean, the whole issue of material fact and whether it existed or not, I think, might have come from Judge Carterman, who heard the earlier proceedings and said something like, if you are going to file a motion for summary judgment, you might have some problems. That's correct, Your Honor. That's correct. But you understand that that is not binding on the subsequent judge. Absolutely. We understand that that was an interlocutory order and that that in no way bound any subsequent judge. Or it wouldn't have even been found Judge Carterman if he remained on the bench. We understand that. But what we also understood and what the context was and what we want this bench to understand was after Judge Carterman's ruling where he said, all right, I see these issues that you have raised, defendants, in your motion to dismiss, and I see some serious issues with the plaintiff's case. I want you to raise them by affirmative defense and, by the way, plaintiffs, I think you're going to have a problem with summary judgment. What happened then was 11 months of delay by the plaintiff. Let's look at one of these issues then. One of the issues you talk about is unclean hands and equitable estoppel. Correct. One of the elements of equitable estoppel is that an injured party must have relied on a misrepresentation to his or her detriment. Now, how did your clients rely on any misrepresentation here if they never made any payments to the plaintiff under any forbearance agreement? What happened was my clients were ready, willing, and able to make those payments, and as a result, they were ‑‑ I believe the record shows they were unable to make the payments. No, there is a question of fact as to whether or not they were able to make those payments, and that's one of those issues of fact because in our verified affirmative defenses, they indicated that when they contacted the bank that they kept contacting them and they kept saying, I want this payment plan, I want this forbearance, and it was the bank that kept screwing things up, and it is the bank that kept sending the notices late. They were ready, willing, and able to move forward, but the bank withdrew it. That's per our verified affirmative defenses. Now, that verified affirmative defense really is only applicable regarding the origination of a mortgage. Isn't that correct? Not later on, what happened later on, but only the circumstances surrounding the giving of the mortgage. Well, this is regarding that late 2009, those events in late December 2009 and 2010. Right, but this affirmative defense isn't even applicable to that. Isn't that correct? I don't think that's correct. Do you cite any authority that indicates that it is applicable at that stage? It is applicable at that stage because this is ‑‑ they had a mortgage in place. But what authority do you cite for that? The authority at that stage, what we had is we had a verbal agreement. The only remaining act would be the sending of the written agreement to confirm that agreement, okay, and the payment of the money. We could not send the money until we received the written documents. Well, why not? Because they told us not to ‑‑ they told my clients not to send the money. They said you have to sign the document and send back the money when you receive this document. That's the procedure. And so they can't send the money back when there's no document. So they were told here's the procedure. You receive the document. You send the money back with the signed document. When they ‑‑ when the document doesn't come until four days after it's due or the document doesn't come until the same day it's due, they are physically unable to comply with the terms of the written document. And so at that point, they contact, again, Wells Fargo and say, look, we need another document. All right, may we move a little further down the process to the confirmation of the judgment of the sale? You discuss Wells Fargo or you cite Wells Fargo versus McCluskey. Yes. And we know from that case and others that a court has to confirm the sale unless under section 15, 1508B sub 4, Roman numeral 4, the lender's conduct prevented the borrowers from protecting their interest in the property and affected their right to redeem property and therefore fines the court would find an injustice. Now, how here did the bank prevent your clients from protecting their interest in the property or affect their right to redeem the property? How are they prejudiced? So it affected their rights in the property because by listing an incorrect amount of the judgment on the notice of sale, they are affecting my client's right to, they're affecting their, the potential, or they're affecting the deficiency judgment that's going to come. They are specifically and continuously going against the judgment that was entered by the court. The court specifically denied the judgment for $332,000. And how do we know this wasn't an inadvertent mistake? What facts are in the record to show that it was a deliberate act or, as you said, they contumaciously disregarded the court's order? The fact that it is the precise amount of the judgment that the court denied, there was an extensive hearing on that amount of the judgment. And you're saying that there's no innocent mistake that could have been made? I don't believe you can have an innocent mistake on the judgment that when the court denied your exact amount of the judgment. But in any event, whether it's innocent or whether it's intentional is irrelevant. The point is, the statute regarding, the IMFL statute is a strict constructionist statute. When you don't comply with the strict terms of the statute, you are opening yourself up to invalidation of the confirmation of sale. Now, how do we, but we're getting a little far afield. We want to focus now on the injustice. Sure. Here, this particular section. This is an important issue. The only case you do cite is the Wells Fargo case. However, I don't know if you're familiar or not, but there is another case, NAB Bank versus LaSalle Bank, a 2013 Illinois Appellate Court case, 121147, from the 1st District. That case does collect the very few cases that are out there with respect to authority on this issue of injustice. Now, there isn't one of those cases that you cite that would assist this court in interpreting this particular section of the statute. However, there are a couple cases that I think I'd like to ask you about. There's a case, J.P. Morgan Chase, that's cited in this LaSalle Bank case versus Fankhauser. And there, the trial court held that, or there, the appellate court held the trial court should have conducted a hearing on whether the purchase price of $32,000, approximately, was insufficient where there was evidence that the property was worth $325,000. How is this situation at all like that? We're talking here about a difference of $10,000, whether it's a mistake or deliberate. How is that like this J.P. Morgan Chase Bank case? Well, I think one of the issues is the court wrestled with the very issue about whether $10,000 was a sufficient amount. The court wrestled with what the underlying facts were, but the court never conducted a hearing. And so we weren't allowed to find out how this notice ultimately was made that was improper. No, no, I don't think the issue is how the notice was made. The issue is what prejudice this resulted in to your clients. And I think to carry that a step further, we weren't allowed to investigate the number of people that were at the sale, how the sale was conducted, whether or not we weren't allowed to bring forth witnesses, whether or not what impact it had upon the sale and what impact it may have had upon the sale if the proper sale price would have been given. The court made a finding, however, that this amount was not prejudicial. Correct. And the court made that finding even though, you know, and again, no judicial notice was taken of anything. But even though in the field of real estate, often people search for property prices at increments of $25,000 or at increments of $10,000. And by listing the wrong price, what we have is a price that went from in the range of $200,000 to $225,000. It then got into the next increment level, which was over $225,000. And we may have been able to bring forth witnesses from a real estate or any sort of witnesses. This court needs to be looking at case law. There are five or six or seven cases, none of which are cited in your brief, that are helpful on this issue. And I think those, and while we apologize for the oversight on the case law, what I think the case law would indicate is that a hearing would be necessary, an evidentiary hearing would be necessary. I don't, with all due respect, counsel, I don't believe that's exactly what those cases stand for. But two older cases that I looked at talking about justice, and I suspect Justice Enoff has too, is the Citibank Savings of Illinois v. First Chicago Trust and another, Fleet Mortgage v. Deal. In both of those situations, well, in the Deal case, the parties had actually redeemed and the sale went ahead anyway. And certainly that would be an injustice. It sounded like one hand didn't know what the other hand was doing in a rather large financial entity. In the other case, the sale was advertised, in the first case, Citicorp, the sale was advertised for a specific date, but then it went earlier than that date. So the parties couldn't have had representatives there to deal with the issue. Those two seem pretty clear because we're using a wrong date and we're using, we're selling a property that shouldn't have been sold. I think there's another case out there, and forgive me for not knowing the name, not only was there an unconscionable issue, there may have also been the wrong piece of property actually sold. Those are pretty obvious, and whether they had a hearing or not, it was pretty obvious that that was the issue. I doubt that any of these banks said, oh, we made a mistake, so there might have been a hearing. But you had people at the sale. There were people bidding. It was this market, and I couldn't find, and my guess is maybe that's why it's not cited here, you couldn't find any case supporting the position that you were making, that the wrong amount causes an injustice. If it doesn't cause an unconscionability, and there is some question, I think, in that NAB bank case that a very low amount was not unconscionable, how can the wrong amount be unconscionable or an injustice? Well, if I can address this first, I believe that the evidence does show that there were no parties at the sale, that the bank is the party, first off, the bank is the party who bought the property because there were no bids. As to whether, how many people showed up at the sale, I don't believe there is evidence at this point because we weren't allowed to have an evidentiary hearing on this issue. But I think one of the issues for this court to consider is when a party like the bank puts the wrong number in, you know, one of the issues that the court, frankly, and you can see from the record, really wrestled with is what amount of an incorrect judgment is too much? Was the incorrect amount rectified at the sale, or was the sale, did the sale proceed on the wrong amount and the bank then bid lower than the wrong amount? The sale, we actually requested that the sheriff come and that an evidentiary hearing be held on that exact issue because we wanted to know whether, what amount was used at the time of sale and the sheriff did not have a recollection of the amount that was used at the time of sale and whether it was the wrong amount or the right amount that was used at the time of sale. Well, would it make a difference if, I mean, you're concerned that the amount that is, the published wrong amount was one that the judge specifically found not appropriate and he entered a lower sale amount. What if the notice had said $330,000, something in the middle? It was truly a typo. Would that be the same problem, even though it was a wrong amount? Are you saying that the fact that the judgment, they wanted $332,000 and it should have been $324,000, or my figures aren't exact, that's the real problem? Not that it was wrong, but it was the amount they wanted rather than the amount the judge said was appropriate. I think the issue is that it's a wrong amount. I think the issue that you're indicating about, that it was the precise amount that the judge denied, goes towards possibly intent, goes towards possibly the reason why it was put in there, goes possibly towards an investigation as to how this happened. But I don't think it necessarily affects the impact because when you're talking about the notice of sale and you're putting a wrong amount in, this is what the public sees. And when we're talking about what impact it's going to have, the impact is going to be the same upon the public, whether or not it was a judgment that was entered in the court file or not. Was your client prejudiced by an increased efficiency judgment? Well, my client is impacted not by an increased efficiency judgment, but what we're arguing is that because the amount is increased in the notice, there's less opportunity for people to bid because it is a higher price. There's nothing in the record that would show that. But we would ask for an evidentiary hearing on that issue and ask that it be remanded for an evidentiary hearing on that issue. We review the judge's decision on this for abuse of discretion, correct? Correct. We do review it on that. But our issue is that when the judge says the amount at $10,000 plus is perhaps not enough, our issue is it shouldn't be a question of how much is too much because that is really – it is our position that any amount is too much. Okay. If they said $200,000 in the wrong notice and then they bid $200,000, how are you prejudiced? If the amount was $200,000 and it was bid $200,000 and the actual amount of the property – or sorry, the actual amount of the judgment is in fact higher, we would be – we would be – we would be – we would be receptive because you would have a higher number of people coming to bid on the property and the opportunity would be there for bidding. What exactly did your clients do in reliance of the notification that actually prejudiced them? Which notification? The notification where they could pay up and terminate the proposal. What they did is they relied on – they had the money put aside. They continued to pay counsel fees in order to attempt to – in order to attempt to close this case. They incurred attorney's fees by negotiating. They had a reliance by paying attorney's fees in order to attempt to settle this matter. What would have happened had your client received the notification and the document, and even though it was late because of the postmarking or the mailing or whatever, and your client had either hand-delivered it within 24 or 48 hours of receipt and said, here, take it, you're a stop from refusing it because you gave me this too late. That didn't happen, did it? But they did call to look for instruction about what they should do, and immediately, on the day of receipt, on both days of receipt, they made that phone call and said, what should we do? And that's when they were told – on the first time, they said, well, we'll send you a new one, which then promptly was missent again. And then on the second one, they said, to my clients, per our allegations, which are verified, which should have been taken in as evidence. On the second one, they said, to my clients, no, we're withdrawing it. You're no longer eligible for the program. That is what we alleged in our affirmative defense. That is absolutely the right to do that, correct? And what we're alleging is that because there was enough for innovation under the law, that they did not have that right. And then what we're saying is we should have been allowed to present this evidence, and even if they were allowed to do it, we should have been allowed to present this as evidence of estoppel for this foreclosure case. Okay. Thank you. You'll have an opportunity to take this home. Thank you. Mr. Woodworth, you may proceed. May it please the Court. Charles Woodworth on behalf of the plaintiff, Bank of New York, Mellon, as trustee. Why shouldn't there have been an evidentiary hearing held here by the Court on the points that counsel argued? Shall I begin with summary judgment? Wherever you'd like to begin. So on summary judgment, I don't believe that there was any reason for an evidentiary hearing, either on the equitable estoppel defense or on the homeowner's notice defense, or if we're including that in the IFR, the independent foreclosure review notice, to take those in order on equitable estoppel. As this Court already noted, first of all, it's a defense that in the mortgage foreclosure context, at least two appellate courts in Illinois have held that it only goes to actions relating to the transaction that gave the note in the mortgage, which was not the case here. But even going beyond that, because I understand that counsel disputes that, there's certain elements for the defense of equitable estoppel that simply weren't satisfied here. There's no evidence of reliance or even allegations of reliance. There's no evidence of damages. And I just wanted to point the Court to the verified affirmative defenses, because counsel mentioned multiple times that they alleged in there that they were able to make the payment and that, therefore, there was a disputed question of fact. In appendix page 47, paragraph 10 of the affirmative defenses, it says, defense, this is with respect to the second plan, which, or second proposed plan. The defendants contacted Wells Fargo to advise of the impossibility of complying with deadlines due to late mailing of correspondence and were advised Wells Fargo was unwilling to proceed with the forbearance plan due to defendants' purported noncompliance with the due dates. Okay, so that's a general allegation. It contains some facts, but then it's fleshed out by the record, which shows in multiple entries that were in the notes log that was submitted as part of the record for summary judgment, which was uncontradicted. Defendants had the opportunity to submit counteraffidavits with bank statements showing that they had the amounts to make or some sort of affidavits showing that they were able to make the payment, which they didn't. So the records show that on January 5th, just as plaintiffs, as defendants allege, they did call. They said, we just got this. They said, you know, we're planning on paying by certified funds or by certified mail, sorry. But then they also inquired as to when the payment could be made. And the record isn't clear on what happened after that, but it shows that on January 11th, the next time they called, the next conversation they had, the defendants wanted to change the terms of the plan, and they also advised plaintiffs that the terms of the plan were not affordable. Okay. Was there a notice that in that second notice said something about no money was owed? Yeah. It appears that there's a typo. That's a pretty big typo. How is that not misleading? Because it may be. It's not misleading because it's not. There's no evidence that they relied on it as being misleading. They never tried to send in no money. They didn't try to send in the plan signed and say we're not submitting any money because the plan said you don't have to submit anything. It's a typo. It's in the record. There's nothing I can say about that, obviously. But it's also a pretty obvious typo. I believe it's dollar sign, period, zero, and I don't even think there's a second zero. It's something went wrong somewhere. But the point is that there's no damages. And just to go back to the point that they couldn't make the initial payment earlier in the record, there's evidence from December that even with the first plan, they couldn't make the $3,000 initial payment that was due on December 21st. They were asking as early as December 14th to make that payment on January 14th instead of December 21st. Now, January 14th is after the date that the due date in the second plan that they obviously couldn't meet because of, or they arguably couldn't meet because of when the plan was sent. But it's after January 5th, it's after January 11th when they again reaffirmed that the plan was not affordable and they couldn't make the payments. If they had sent in the plan, I believe as this Court noted, if they had sent in the signed plan with the first payment and plaintiff had rejected it, then they had taken an action in reliance on the statement, and then there would be a basis for a stop. But there's no evidence to support that, so there's no need to go further. You basically are arguing that there has been some statements made by you that you're claiming that in reliance they're on, they didn't do anything. Is that correct? Is that how I understand your argument? That is one of several arguments. Also that they weren't harmed by it because they didn't do anything. Let's turn for a minute to the misstated amount, the judgment amount in the notice. Is it your position that that's an immaterial amount to have in a notice of sale, a $10,000 difference? And how wouldn't that harm them? Yes. In this context, our position is that's an immaterial amount. In the sense, I'm not minimizing the amount of $10,000. I'm sure we would all love to have an additional $10,000. But in this case, it's immaterial because the judgment amount is not tied to the sale amount. It's not tied to the initial bid amount at the sale. It's an amount that they're, honestly, as this court noted, there's no evidence in the record that they suffered any prejudice as a result of this, even though there were no other bidders at the sale. Is it required to be in the notice to begin with? It's not required to be in the notice. And counsel, defendants have admitted that both before the circuit court and in their briefs on appeal.  It was a mistake. It was. But it's not an injustice. It's not an injustice. Why not? Because as the Supreme Court noted in McCluskey, when it was analyzing what an injustice was, it chose to highlight two cases, Fleet Mortgage Court and commercial credit loans v. Espinoza. And in both of those cases, both of those cases dealt with redemption, and it's not our position that this is only an injustice when it deals with redemption. But it reveals two things. First, in both cases, there was evidence of actual prejudice to the complaining parties. And then also, there was, in both cases, the injustice complained of directly affected the complaining party's interest in their property in some way. Here, there's no personal deficiency amount. They're not on the hook for any more money in any sense. They're not saying that on this, when we're talking just about the order confirming sale, they're not saying any other reason for why they would owe more money or why it matters whether the bank bid, credit bid, 200 and I believe it was 220,000, something like that. This isn't even like J.P. Morgan v. Funkhauser, which this Court brought up. Because in that case, it was relevant that the sale price, not the amount listed as the judgment amount in the notice of sale, but the actual sale price was what concerned the Court. And in that case, the sale price of 32,000 was roughly a tenth, less than a tenth of the judgment amount. And so the reason for an evidentiary hearing in that case is because of the possibility of a deficiency judgment that the mortgager would be personally responsible for. That's obviously a huge amount of money for any mortgager to be responsible for if there was something dishonest or inequitable done at the sale that resulted in that sale price. But here, there's no evidence that anything was done that affected the sale price. The circuit court expressly found that there was no prejudice. This isn't even a situation where this Court has to hold definitively that a misstatement of the judgment amount in the notice of sale can never be an injustice. That's not what we're arguing. This is a much more modest position. It's that there is no evidence of injustice in this case. There's certainly nothing approaching a fleet mortgage redeal or commercial credit v. Espinoza. There's nothing like Citibank v. Chicago trustee. The notice date in that, it was arguably an injustice because the notice date is actually one of the statutory requirements. You have to have that in it. But what about the argument counsel made that the Mortgage Foreclosure Act is an act that has to be strictly complied with, and therefore, a couple of cases that were cited, the Ergod case, Barnes case, to support the proposition that the bank really had to specifically follow the directions of the foreclosure decree, that is, the judgment. And now the judgment had a particular amount, and the notice did not. Okay. I think there's two answers to that. The first is that although, in general, defendants may be right that it should be strictly construed, this is dealing with a specific instance in the Illinois mortgage foreclosure law, the notice of a judicial sale. And that's governed by Section 15-1507C. And in 15-1507C, it expressly says that immaterial error in the information shall not invalidate the legal effect of the notice. If we were to strictly enforce the statute, wouldn't it be probably better if the statute said that under no circumstances should an amount be submitted in the notice? In other words, the statute, is it silent about whether or not a notice is appropriate? If it's silent, how can you strictly enforce it? That's another point. That's another reason why, and it's also in terms of the actual judgment of foreclosure, the paragraph dealing with the terms of sale doesn't prescribe, it mimics the language of 1507. It doesn't say anything about what judgment amount needs to be in the notice of sale. Well, it says the judgment amount doesn't have to be there. But your client chose to put the amount in. And strangely enough, it was the one that was denied at the trial court level. Yes. Does that change the situation? No. And why not? It doesn't change the situation because, again, there's no relationship under the Illinois Mortgage Foreclosure Law, which we're construing. There's no relationship between the judgment amount and the sale price. And the sale price is what the relevant term is from the judicial sale, because that affects deficiency amounts. It affects defendants' interest in their property. If the sale price is too low, again, as in J.P. Morgan v. Funkhauser, it could potentially be a concern. And also, I just want to comment on there seems to be an implication that because it was the judgment amount requested and then denied, that that implies that there was something shifty going on in some ulterior motive. And while I concede that could be the case, I wasn't foreclosure counsel. I wasn't counsel below. It's also just as easy to say that that amount shows that all that happened was they just prepared all these documents in advance, and they failed when the judgment amount in the judgment of foreclosure was changed by hand by the judge, that they failed to update their internal form documents, because all these documents are form documents. I'm sure this Court sees virtually identical documents in other appeals for mortgage foreclosure cases. Do you know, Ms. Rozovich, I think is how you pronounce it, she mentioned that she didn't know what the bid was that the sheriff broadcast or published. Do you happen to know what it was? I don't, but I think that's another reason why the judgment amount in the notice doesn't matter, because it was something different than that. We didn't start with the judgment. Does the sheriff normally look at what the judgment order is and then determine the amount of the judgment based upon the judgment order, or does he base it on the notice? It's based on neither. It's based on, and this is in the record and cited to in our brief. I don't think I have the reference here. But it's based on an oral bid that is given by the plaintiff to the sheriff or to the auctioneer, whoever is conducting the sale, on the day of the sale. That is the starting bid. There is no requirement that it be connected to the judgment. In fact, I would argue it generally benefits the plaintiff in foreclosures to start lower than the judgment amount to entice bidding, and obviously often plaintiffs are even willing, plaintiffs could always credit bid the full amount of the judgment, but they often don't because they'd rather get 75 cents on the dollar in cash, something like that. Here, it seems like no one was willing to bid above the initial bid price that was submitted by an oral opening bid to the sheriff. Any other questions? Thank you. Thank you. Ms. Pasevic. Just briefly on that last point, the opening bid is not the issue. The amount of the opening bid is not the issue. The sale price is not the ultimate issue. I mean, ultimately, the sale price is the issue. The issue is the amount that is placed in the notice of sale. No amount is required. So your earlier argument was that when people look to go to these, they look in certain increments. At least that's what you're suggesting. Well, if there's no notice or there's no amount in the notice, what are they looking at, location? They would look at a myriad of factors. They may look at the market price for that type of house. They may look at history. They may look at a myriad of factors. Why can't they do that with a price, even if it's wrong? Well, they can, but where a notice of sale lists the judgment amount, that is an affirmative duty that has been undertaken by the plaintiff to get it right. And that's where the injustice comes into play. Because otherwise, what you are doing is you are holding out false and deceptive information to the public. And that is where how the ultimate sale price is going to be affected, how the people who fail to come to the sale are going to be affected, how nobody else makes a bid is going to be affected. Right, but McCluskey tells us that we have to look at the lender's conduct and how that affected the right to redeem, the borrower's right to redeem. How did that affect that? I'm sorry, what does it say? In McCluskey. Right. Okay, the appellate court found injustice under this Section B-4 where, and all the cases we've talked about in the last few minutes, where the lender's conduct prevented the borrowers from protecting their interest in the property and affected their right to redeem the property. How did this affect their right to redeem the property? Well, it would affect their right to, it would affect their interest. I think it affects the first part. It affects their interest in the property because when the sale, when the notice of sale is given, which is improper, it then opens them up to a higher deficiency amount because the ultimate sale, which occurred to the bank, the ultimate sale, which occurred at the opening bid amount, there were less potential bidders, which means there was not a fair process, which means there was not competitive bidding, which means that ultimate sale price stayed at the opening bid, which means a higher deficiency amount. But we don't know if that's the reason there were fewer bidders there. And that's why we would ask for that evidentiary hearing. What's the standard of review relative to this? Relative to this issue? Relative to the inaccuracy of an unnecessary publication of an amount alleged to be the judgment. Well, I think the standard of review on the entire issue is an abuse of discretion on the confirmation of the sale. And so that's what we have to look at. But what we are saying is that it was an abuse of discretion because of the failure, because it was in fact, it did in fact rise to the level of an injustice. And it was an abuse of discretion not to find an injustice because the judge indicated, if you look at his reasoning, that he did find there to be essentially an injustice. But the problem he had was he weighed the amount. And our position is that the amount is irrelevant, that when, that it is not, it is not less than 10,500. But what authority are you relying on? We're relying on the authority that the IMFL is a strict interpretation statute. And that when you violate that statute, and that includes, I realize that this didn't require a publication. In any respect, by including a piece of information, we've just talked about this, Justice McClaren just asked about it, that didn't have to be in there? Yes, because when you include a piece of information that doesn't have to be in there, you are still including something that is misleading. And you are including something that it is an injustice to put a wrong judgment amount. This isn't a dollar figure. This isn't a, let me describe the property. You know, let me describe how the grass looks. This is a number. Your syllogism is that anything that's inaccurate is itself facto misleading. And I'm having problems accepting that argument. So could you be a little bit more specific as to how this inaccuracy misleads and who does it mislead and where does it mislead them to if it's more than one? And after all is said and done, after explaining that, how does that prejudice your client? Sure. When I say it is an ipso facto misleading, it is because it is a number. And I think when you have absolutism... Because of the amount of the number or the amount of the difference? It is the amount of the judgment, the number amount of the judgment. And when you undertake to publish a number and say this is an absolute, okay, to a dollar and to a cent, this is the judgment amount, you are telling the public that this is the amount that attaches to this property, okay? And if you wish to go and bid on this property, this is what you're bidding on. You're bidding on a property that has a foreclosure judgment on it. And so when you come, you are going to be bidding on something that the bank is expecting to get as close as possible to this number. That's the expectation. So if you can't get up towards that number, don't come. Look in the bid. And so when you increase that by $10,500, when you increase that by a penny, when you increase that by $500, you are changing. If the number had been lower, then it probably would have incited people to come and bid, correct? If the number had been lower, it would incite people to come to bid. Even though they would have been frustrated when they found out that the appellee was going to bid higher than what was published. And what we would ask is that there allow to be an evidentiary hearing regarding the impact of that. Okay. Counsel, in your reply brief, you spend quite a bit of time parsing the word authorities. And you point out that there is no definition in the Supreme Court Rule 341H7 of the term authority. And you indicate that your table of points and authorities has many authorities in it, including a citation to the Illinois Constitution, including many statutes. I would respectfully point out and caution you that citing one section, for example, for a violation of due process without any case law and without explanation and creation of a cotent legal argument to accompany that does not meet the requirement of the rule. Nor does citing case law only for boilerplate meet the requirements of the rule. I'm sure you've often read and we often see and we often write that dumping the burden of research upon the appellate court is something that we don't condone. So I would respectfully caution you that in the future, you look for some additional case authority to support the arguments that you do put in your brief, please. I appreciate that, Your Honor. Could I briefly just respond on just one or two sentences? We were trying to focus our argument definitely on the burden of 1005. And from a summary judgment perspective, we did not wish to focus on all of the underlying requirements for, say, for example, equitable estoppel because the judge never considered the sufficiency of our arguments. He just blanketly said, I'm not even going to get towards that. So really, we were hoping that when we were looking up here, what we were looking at is the judge never even considered whether there was a question of that. Well, counsel, the record speaks for itself with regard to that. Case law is very essential and important nevertheless. Thank you. Thank you. We'll take the case under advisement. There are several cases on the call. We're going to take a short recess.